UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JORGE MARTINEZ,

        Plaintiff,

    v.                                  Case No. 23-cv-1209-bhl

JENNIFER MCDERMOTT,
JOHN NOBLE,
THOMAS POLLARD,
TAMMY STAEHLER,
BRIAN LEMPKE,
CORY SABISH,
KELLY JODAR,
JULIE LUDWIG, and
JOHN AND JANE DOES,

        Defendants.

---

## SCREENING ORDER

---

Plaintiff Jorge Martinez, who is currently serving a state prison sentence at Kettle Moraine Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Martinez's motion for leave to proceed without prepaying the full filing fee, his motion to appoint counsel, and to screen the complaint.

### Motion to Proceed without Prepaying the Filing Fee

Martinez has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). Martinez has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of

his complaint, as required under 28 U.S.C. §1915(a)(2), and has been assessed and paid an initial partial filing fee of $44.67. Martinez motion for leave to proceed without prepaying the filing fee will be granted.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, and dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

According to Martinez on September 1 and 2, 2020, his institution completed a second mass testing for Covid-19. Martinez asserts that numerous inmates tested positive, but Martinez, along with the rest of the inmates in his unit, tested negative. He states that some positive inmates were quarantined while others remained in general population. He asserts that two units were locked down on September 9, 2020, but his unit was not locked down. According to Martinez, Warden Jennifer McDermott had opted not to place the institution on lockdown in August "for climate reasons," which the Court assumes means she believed it was too hot to confine the inmates to their cells all day. Dkt. No. 1 at 4-5.

Martinez asserts that, on September 9, 2020, he and other inmates were in close contact with one other, including shaking hands and hugging. He states that, that same day, one of the inmates informed an officer that he was experiencing Covid-19 symptoms. The inmate tested positive on September 14, 2023. Martinez asserts that the inmate was not quarantined immediately after informing the staff member he was experiencing symptoms; he was merely instructed to stay in his room as much as possible. Martinez asserts that on September 14, 2023, he complained to staff members that he was experiencing symptoms. He states that he was told to stay in his cell except to shower, use the restroom, and eat meals. Martinez explains that he tested positive and remained in his cell; he was not quarantined. Martinez explains that he felt sick for about two weeks, including chills, rashes, loss of taste and smell, fatigue, and coughing. According to Martinez, the entire institution was locked down on September 23, 2020. Dkt. No. 1 at 6-7.

#### THE COURT'S ANALYSIS

Martinez seeks to state Eighth Amendment claims against numerous Defendants because they failed to prevent him from catching Covid-19 at the height of a worldwide pandemic. Under the Eighth Amendment, prison officials must not only provide "humane conditions of confinement," but they must also ensure that "reasonable measures" are taken to guarantee inmate safety and prevent harm. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). "To state a claim premised on prison officials' failure to protect him from harm, [a plaintiff] must allege that the defendants knew of and disregarded an 'excessive risk' to his 'health and safety.'" *Id*. (citing *Farmer*, 511 U.S. at 837). Martinez focuses on the Warden's delay in ordering an institution-wide lockdown and unidentified staff members' failure to quarantine a particular inmate immediately upon learning that he was experiencing symptoms associated with Covid-19. But, for the reasons explained below, neither serves as a basis for relief under the Eighth Amendment.

As to the warden, Martinez acknowledges that precautions were taken to minimize the spread of the virus, including partial lockdowns, institution-wide testing, encouraging suspected cases to isolate with limited exceptions, and quarantining confirmed cases. Martinez also acknowledges that the warden previously considered and rejected an institution-wide lockdown based on the impact to inmates. As the Supreme Court has emphasized, "the problems that arise in the day-to-day operation of a corrections facility are not susceptible to easy solutions. Prison administrators therefore should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Obviously, "the challenges of managing [the pandemic] in a correctional setting are astronomical." *Mayfield v. Peissig*, No. 20-cv-269, 2020 WL 3414757, at *2 (W.D. Wis. June 22, 2020) (citations omitted).

Given the other actions that the warden and others took to mitigate the risk of the spread of Covid-19, her failure to lock down the entire institution at a specific time does not amount to deliberate indifference. *See, e.g., Rowe v. Buss*, No. 21-1182, 2021 WL 5232512, at *2 (7th Cir. Nov. 10, 2021); *Giles v. Tobeck*, 895 F.3d 510, 513 (7th Cir. 2018) ("That a response did not avert the risk does not mean it was unreasonable, and the standard is always reasonableness in light of the surrounding circumstances.").

Martinez also fails to state a claim against the unidentified staff members who allegedly failed to immediately quarantine an inmate who informed them he was not feeling well. Martinez asserts that he and others had contact with the inmate the same day he reported his symptoms, but he does not clarify if he had contact with the inmate before or after the inmate started feeling unwell. Regardless, Martinez alleges that multiple positive cases were detected in his unit within just a few days. As such, Martinez merely speculates that he caught Covid-19 from the inmate who was not immediately quarantined. Martinez could have been infected by that inmate, by a different inmate, or by a staff member. Without knowing who infected Martinez (and there is no way to know who infected him), Martinez cannot plausibly allege that he was harmed by the unidentified staff members' decisions to not immediately quarantine a particular inmate. *See Roe v. Elyea*, 631 F.3d 843, 864 (7th Cir. 2011) ("In order to succeed in a § 1983 suit, a plaintiff must establish not only that a state actor violated his constitutional rights, but also that the violation *caused* the plaintiff injury or damages."). Further, as was the case with the warden, the unidentified staff members responded to the risk, including instructing the inmate to remain in his cell with limited exceptions. The mere fact that they did not respond in the way Martinez would have preferred does not support an inference that they turned a blind eye to the risk of infection. As another court observed during the time in question, "The plain fact is that the country is

5

experiencing a pandemic and cases of COVID-19 are breaking out in prisons and communities across the country. This does not mean that the correctional officers in charge of those prisons are subjecting inmates to cruel and unusual punishment. People, both inside and outside prisons and jails, are contacting COVID-19 . . . ." *Coates v. Arndt*, No. 20-C-1344, 2020 WL 6801884, at *2 (E.D. Wisc. Nov. 18, 2020).

Martinez also sues numerous high-ranking officials within the Department of Corrections who were allegedly in charge of ensuring that staff and inmates followed Covid-19 protocols, but this is not enough to state a claim under §1983. Supervisors can be held liable for their employees' constitutional violations only when the violations happen at the supervisor's direction or with the supervisor's knowledge and consent. *Hildebrant v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003). In other words, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id.* Martinez does not allege that any of the high-ranking officials he sues had any knowledge of, let alone involvement in, the specific decisions by the warden and staff members about which he complains.

In sum, while Martinez describes why he thinks prison officials' responses to the Covid-19 pandemic were inadequate, the Court cannot reasonably infer that any Defendant's action or inaction violated his constitutional rights. While Martinez acknowledges that precautions were taken, he insists that staff did not do enough or that they violated institution policy. But, even if staff's approach to testing and quarantining was conducted imperfectly, negligence does not constitute deliberate indifference and a violation of state laws or regulations is not a basis for a federal civil rights case. *See Hildreth v. Butler*, 960 F.3d 420, 426 (7th Cir. 2020); *Guajardo-Palma v. Martinson*, 622 F.3d 801, 806 (7th Cir. 2010); *Domka v. Portage Cty., Wis.*, 523 F.3d

776, 784 (7th Cir. 2008). Accordingly, Martinez fails to state a claim upon which relief can be granted.

The Seventh Circuit has emphasized that the norm is to afford a plaintiff at least one opportunity to amend his complaint. *See Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022). Accordingly, if Martinez so chooses, he may file an amended complaint by **November 17, 2023**. He is advised that an amended complaint will replace the prior complaint and must be complete in itself without reference to the original complaint. *See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056–57 (7th Cir. 1998). If an amended complaint is received, the Court will screen it as required by 28 U.S.C. §1915A. If an amended complaint is not received, the Court will dismiss this action based on Martinez's failure to state a claim in his original complaint. The Court will enclose an amended complaint form along with this decision. Martinez must use the form. *See* Civil L. R. 9(b). If he needs more space, he may attach up to five additional pages.

Finally, along with his complaint, Martinez filed a motion to appoint counsel. In a civil case, the Court has discretion to recruit a lawyer for individuals who cannot afford to hire one. *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013). In exercising its discretion, the Court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" *Pennewell v. Parish,* 923 F.3d 486, 490 (7th Cir. 2019) (quoting *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007)). While it appears that Martinez has satisfied the first prong, the Court will deny his motion because he is capable of representing himself at this stage of the case. All Martinez must do, if he so chooses, is prepare

an amended complaint. Based on his filings to date, the Court is confident that Martinez is capable of telling the Court what happened and why he believes he is entitled to relief.

**IT IS THEREFORE ORDERED** that Martinez's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS THEREFORE ORDERED** that Martinez's motion to appoint counsel (Dkt. No. 3) is **DENIED without prejudice**.

**IT IS FURTHER ORDERED** that on or before **November 17, 2023**, Martinez may file an amended complaint if he believes he can cure the defects in the original complaint as described in this decision. If the Court does not receive an amended complaint by the deadline, it will dismiss this action based on Martinez's failure to state a claim in the original complaint.

**IT IS FURTHER ORDERED** that the Clerk's Office mail Martinez a blank prisoner amended complaint form and a copy of the guide entitled "Answers to Prisoner Litigants' Common Questions" along with this order. Martinez must use the Court's form.

**IT IS FURTHER ORDERED** that the agency having custody of Martinez shall collect from his institution trust account the $305.33 balance of the filing fee by collecting monthly payments from Martinez's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Martinez is transferred to another institution, the transferring institution shall forward a copy of this Order along with Martinez's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Martinez is located.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Martinez is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin on October 23, 2023.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge
